U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
**FILED**

MAR 2 2 2013

CLERK, U.S. DISTRICT COURT
By _____
           Deputy

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

MAYFORD K. DAVIS, JR.,              §
                                    §
          Plaintiff,                §
                                    §
VS.                                 §   NO. 4:12-CV-739-A
                                    §
ROBERT LEAVITT, ET AL.,             §
                                    §
          Defendants.               §

### MEMORANDUM OPINION
### AND
### ORDER

In early December 2012, defendants, Robert Leavitt
("Leavitt") and General Service Bureau ("GSB"), through their
attorney, gave notice by mail to plaintiff, Mayford K. Davis,
Jr., of their intent, if plaintiff did not amend his complaint to
withdraw certain allegations contained therein, to file a motion
for sanctions, a copy of which was enclosed with the notice
letter. When plaintiff did not respond, defendants filed their
motion for sanctions on February 1, 2013, worded the same as the
one mailed by defendants to plaintiff in early December 2012.
After having considered such motion, plaintiff's response in
opposition thereto, the evidence received at the hearing
conducted on such motion on March 20, 2013, the papers filed in
the above-captioned action, the declaration of Keith Weir filed
on March 20, 2013, items of which the court has taken judicial
notice (consisting of documents in the files of suits filed by

plaintiff in this court similar to the above-captioned action),
and pertinent legal authorities, the court finds and has
concluded that plaintiff has engaged in conduct that authorizes
the court to impose sanctions on plaintiff pursuant to the
provisions of Rule 11 of the Federal Rules of Civil Procedure.

After having considered all of those things mentioned above,
the court finds and concludes as follows:

1.   Plaintiff has been an unrepresented party throughout
the pendency of the above-captioned action.

2.   The above-captioned action was initiated by a complaint
signed and filed by plaintiff with the clerk of this court on
October 18, 2012.

3.   Such complaint alleged factual contentions that did not
have evidentiary support, including the following:

a.   the allegation on page 2, in paragraph 10, that
defendants obtained "Plaintiff's consumer credit reports
illegally, knowingly reporting false and inaccurate
information to the credit reporting agencies, and not having
a permissible purpose for obtaining Plaintiff's credit
report";

b.   the allegation on page 3, paragraph 13, that
"Plaintiff discovered after examining the consumer credit
reports [that he obtained on or about May 17, 2011] that the

2

Defendants had obtained his consumer credit report <u>twice</u>
from TransUnion Credit Reporting Agency on or about October
2007";

    c.   the allegation on page 3, in paragraph 14, that
"Plaintiff discovered after examining the consumer credit
report from Experian that the Defendants had obtained his
consumer credit report <u>twice</u> on or about January 2008";

    d.   the allegation on page 3, in paragraph 15, that
"Plaintiff discovered after examining his Equifax consumer
credit report that the Defendants had obtained his consumer
credit report <u>twice</u> on or about December 2009";

    e.   the allegation on page 5, in paragraph 24, that
"Defendants obtained Plaintiff's consumer credit report
under false and misleading representations violating the
FDCPA, 15 U.S.C. § 1692e(2)";

    f.   the allegation on page 5, in paragraph 25, that
"Defendants used deceptive means in an attempt to collect an
alleged debt by obtaining Plaintiff's consumer credit report
violating FDCPA § 1692e(10)"; and

    g.   the allegation on page 7, in paragraph 45, that
"Defendants negligently failed to comply with the FCRA
§ 1681o by obtaining Plaintiff's consumer credit report

without permissible purpose as set forth in 15 U.S.C.

§ 1681b(f)."

4.   Neither defendant had obtained plaintiff's consumer credit report before this action was initiated on October 18, 2012.

5.   Plaintiff had no information before October 18, 2012, that would cause him or any rational person to believe that before that date one or both of the defendants had obtained his consumer credit report.

6.   On July 24, 2012, plaintiff sent to defendants the original of the letter that was marked Exhibit 2 during the March 20, 2013 hearing on the motion for sanctions.  Exhibit 3 to such hearing is a copy of the response of defendants to plaintiff's July 24, 2012 letter.  Defendants informed plaintiff by such response that GSB had not pulled a credit report for him, and explained to plaintiff by such letter the method by which plaintiff could determine whether GSB had pulled his credit report or had made an inquiry concerning his credit.  Defendants' response also explained to plaintiff his error in relying on the mention of Alegent Health on his consumer credit report as an indication that GSB had pulled his credit report.

7.   Plaintiff developed a practice of threatening to file lawsuits similar to the above-captioned action for the purpose

of, in effect, extorting money by those threats from the proposed defendants.  Plaintiff had been successful in obtaining at least three payments of $1,000.00 or more from activities on other occasions similar to the activities in which he engaged in connection with the above-captioned action and the events leading up to it.

8.   In addition to the July 24, 2012 letter mentioned above, plaintiff sent to defendants the August 8, 2012 letter that is marked Exhibit 4 to the hearing held March 20, 2013, which was accompanied by the items that are included as a part of Exhibit 4.  The credit report that is the last page of Exhibit 4 does not show that either defendant requested or received a copy of plaintiff's consumer credit report.  Instead, that page simply shows that GSB had informed the credit reporting agency that GSB was the owner, by assignment, of a debt owed by plaintiff to Alegent Health-Midland.

9.   Exhibit 1 to the March 20, 2013 hearing is a copy of a letter sent by Keith Weir, as attorney for defendants, to plaintiff on December 5, 2012.  A copy of the motion for sanctions that actually was filed February 1, 2013, accompanied such letter when it was sent to plaintiff.

10.   Plaintiff did not after December 5, 2012, amend his complaint to withdraw any of the allegations he made in the complaint as it was filed on October 18, 2012.

11.   When an attorney for defendants discussed by telephone with plaintiff the expenses defendants would incur in the defense of the above-captioned action if plaintiff did not withdraw his allegations, plaintiff responded to such attorney that incurring such expenses was defendants' cost of doing business, or words to that effect.

12.   By signing and filing the complaint mentioned in paragraph 2 above, plaintiff certified that to the best of his knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, the factual contentions in such complaint had evidentiary support.  Such certification by plaintiff was a false certification as to each of his allegations that defendants obtained a copy of his consumer credit report.

13.   By signing and filing the complaint mentioned in paragraph 2 above, plaintiff certified that it was not being presented for any improper purpose, such as to harass or needlessly increase the cost of litigation.  That certification was false.  Plaintiff's purpose in signing and filing such complaint was to harass defendants and to cause them to incur the cost of litigation.

6

14.   The assertions in the complaint mentioned in paragraph
2 above that defendants engaged in conduct that caused them to
have liability to plaintiff under the statutes mentioned in such
complaint were not warranted by existing law or by any non-
frivolous argument for extending, modifying, or reversing
existing law, or for establishing new law.   Therefore, the
certification made by plaintiff when he signed and filed the
complaint that such claims were warranted by existing law or by a
non-frivolous argument for extending, modifying, or reversing
existing law, or for establishing new law was a false
certification.

15.   Plaintiff's history of threatening to file and of
filing lawsuits similar to the above-captioned action causes the
court to have concern that, if not enjoined from doing so,
plaintiff will continue that practice, notwithstanding his
representation at the March 20, 2013 hearing that he does not
plan to engage in similar conduct again.

16.   Defendants incurred legal expenses, exclusive of
expenses related to matters pertaining to the motion for
sanctions, in the approximate amount of $6,140.00 for legal
services rendered in the defense of the above-captioned action.
Legal expenses in that amount were necessarily incurred for the
defense of defendants in such action, exclusive of time devoted

to matters pertaining to the motion for sanctions.  Legal
expenses in that amount are reasonable, considering all of the
factors the court should consider in determining what constitutes
reasonable legal expenses incurred in litigation.

17.  Sanctions should be imposed on plaintiff for the
reasons given above, and those sanctions should include an order
requiring plaintiff to pay defendants $6,140.00 as reimbursement
to defendants for the legal expenses he caused them to incur by
his conduct in violation of Rule 11, as described above.

18.  While the court has not specifically mentioned all of
the theories of liability alleged in the complaint plaintiff
filed October 18, 2012, the court finds, and has concluded, that
none of the theories of liability alleged by plaintiff against
defendants in such complaint have factual basis or legal support.

19.  The sanctions being imposed by this order are limited
to what suffices to deter repetition of the conduct, or
comparable conduct by others similarly situated, for which the
sanctions are being imposed.

20.  The litigation expenses being imposed on plaintiff as a
sanction are the reasonable litigation expenses directly
resulting from plaintiff's violations of his Rule 11
certifications.

* * * * *

8

Therefore,

The court ORDERS that as a sanction for his violations of Rule 11 of the Federal Rules of Civil Procedure, plaintiff, Mayford K. Davis, Jr., pay to defendants, Robert Leavitt and General Service Bureau, collectively, Six Thousand One Hundred Forty and 00/100 Dollars ($6,140.00) to reimburse them for the reasonable litigation expenses they incurred as a direct result of his violations of Rule 11.

The court further ORDERS that as a further sanction for plaintiff's violations of Rule 11, plaintiff is restrained and enjoined from filing any lawsuit, without first obtaining an order of permission of this court permitting him to do so, in which he asserts any claim or cause of action similar to any of the claims and causes of action he asserted in the above-captioned action; and, the court further ORDERS that for him to obtain permission of this court to file any such lawsuit, plaintiff shall file with the clerk of court a document bearing the caption on this order seeking such permission, to which document plaintiff shall attach a copy of the pleading he proposes to file for the institution of such lawsuit, and he shall explain in such document that it is being filed because of the requirements of this order, and he shall provide in such

9

document an explanation of the factual basis for each of the factual assertions he makes in such proposed pleading.

The court further ORDERS that as a further sanction for plaintiff's violations of Rule 11, if in the future plaintiff threatens to file a lawsuit against anyone in which he threatens to assert a claim or cause of action similar to any of the claims and causes of action he asserted in the above-captioned action, he shall provide to the person against whom such threat is being made an exact copy of this memorandum opinion and order.

SIGNED March 22, 2013.

JOHN McBRYDE
United States District Judge